United States District Court
Northern District of Ohio
Eastern Division

| | |
|---|---|
| Jean A. Dascenzo, on behalf of herself and all others similarly situated. <br><br> *Plaintiff,* <br><br> v. <br><br> The Rawlings Company LLC <br><br> *Defendant.* | Case No. _____ |

## Notice of Removal

Defendant The Rawlings Company LLC hereby removes this action to the United States District Court for the Northern District of Ohio. In support of removal, Rawlings states as follows:

### Parties

1.  Plaintiff Jean A. Dascenzo alleges she is a beneficiary under a Medicare Advantage plan who elected to receive benefits from Aetna Health, Inc., a Medicare Advantage Organization (MAO) that provides Medicare benefits under Part C of the Medicare Act. Complaint ¶¶ 1–6.

2.  Rawlings is a Kentucky limited liability company that provides Medicare Secondary Payer recovery and subrogation services on behalf of Aetna and other MAOs.

### Factual Background

3.  Plaintiff claims to be enrolled as a beneficiary under a Medicare Advantage Plan administered by Aetna. After sustaining injuries in an alleged car accident in December 2023, Plaintiff says she received medical treatment services that were conditionally covered by the Plan. *Id.* ¶¶ 3, 7.

1

4. She allegedly brought a claim for recovery against the at-fault driver's insurance company, Progressive. ¶ 4. When Progressive allegedly disputed the claim, Plaintiff says she hired personal injury counsel, who was able to negotiate a policy-limits settlement of $100,000. *Id.* ¶¶ 4–5, 8.

5. Before receiving the settlement proceeds, Plaintiff alleges Rawlings asserted a subrogation lien against her tort recovery, seeking to recover all the accident-related medical costs paid by Aetna. *Id.* ¶ 9.

6. Though Plaintiff does not dispute Rawlings' right to assert such a lien on Aetna's behalf, she claims Rawlings violated federal regulations by not exempting procurement costs, such as attorneys' fees and litigation expenses Plaintiff allegedly incurred in obtaining the personal-injury settlement, from the amount of the lien. *Id.* ¶ 10.

7. Plaintiff now seeks to represent a nationwide class of (1) Medicare Advantage enrollees, who (2) suffered injuries caused by a third party and received treatment services conditionally covered by an MAO, then (3) obtained a tort recovery against the alleged tortfeasor through a judgment or settlement award, but (4) whose tort recovery was subjected to a subrogation lien by the MAO, acting through Rawlings, in an amount that did not exclude the enrollee's procurement costs. *Id.* ¶ 36.

**Procedural Background**

8. On or about June 17, 2024, Plaintiff Jean Dascenzo filed a class action complaint in the Court of Common Pleas, Cuyahoga County, Ohio, styled *Dascenzo v. The Rawlings Co. LLC*, Case No. CV-24-999019. A true and correct copy of the complaint is attached as Exhibit 1.

9. The complaint was served on Rawlings via certified mail on June 24, 2024.

2

10. This removal is timely under 28 U.S.C. § 1446(b) because the action is removed within 30 days after the date on which Rawlings received service of the complaint.

11. The venue of this removal action is proper pursuant to 28 U.S.C. § 1442(a) because the United States District Court for the Northern District of Ohio includes the Court of Common Pleas, Cuyahoga County, where the state court action has been pending.

12. As will be shown below, this action is removable under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(1), because Plaintiff has sued Rawlings for acts it took "under color of" federal law as a contractor administering Medicare benefits under the supervision and control of the Centers for Medicare & Medicaid Services (CMS), a subunit of the U.S. Department of Health and Human Services.

13. As will be further shown below, this action also is removable under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), because (a) the aggregate amount in controversy exceeds $5 million, exclusive of costs and interest; (b) the nationwide class contains at least 100 members; and (c) at least one class member of the 50-state class is a citizen of a different state from Rawlings.

**Statutory and Regulatory Framework**

I. **The Medicare Advantage Program.**

14. Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease. Congress enacted the Medicare Program as Title XVIII of the Social Security Act ("Medicare Act"), 42 U.S.C. § 1395, *et seq.* Medicare is an enormous and complex federal program.

15. Medicare enrollees may elect to receive their benefits in one of two ways.

16. First, they may receive their health insurance benefits under Medicare Parts A and B, which provide hospital insurance and coverage for medically necessary outpatient and physician services on a fee-for-service basis. 42 U.S.C. § 1395w-21(a)(1)(A).

17. Alternatively, Medicare participants may enroll in a Medicare Part C plan. *Id.* § 1395w-21(a)(l)(B). Originally called Medicare+Choice, Medicare Part C now is known as "Medicare Advantage," and the insurers that administer it—such as Aetna (and its subcontractor Rawlings)—are known as MA organizations or MAOs. Congress enacted this program in 1997 to provide an alternative to the traditional fee-for-service model and "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.).

18. MA is not private insurance. Part C plans are funded out of the same trust funds that support Medicare Parts A and B, *see* 42 U.S.C. § 1395w-23(t), and are governed exclusively by the Medicare Act and its implementing regulations. *See Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016) ("Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS."). Moreover, MA organizations "do not issue a Medicare 'insurance policy' but, rather, send out a document describing the Medicare benefits that enrollees receive," known as an "Evidence of Coverage." E. Kuo, *Developments in Medicare Secondary Payer Law*, 2013 Health Law Handbook § 12.5. That document is written by, and may only be altered with the approval of, the Secretary of Health and Human Services ("Secretary"). 42 C.F.R. § 422.111(d).

4

19. Each MA organization must enter a contract with the Secretary. *See* 42 U.S.C. § 1395w-27. Under that contract, the MA organization generally receives a fixed amount per enrollee and must provide at least the same level of benefits that enrollees would receive under traditional Medicare. *See id.* § 1395w-22. MA organizations are thus incentivized to provide health insurance more efficiently than under the traditional fee-for-service model, for example by providing opportunities for more cost-saving preventative care.

20. Because the Medicare Part C program is a federal program, operated under federal rules and funded by federal dollars, Medicare Part C expressly preempts state law. *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. §§ 422.108(f), 422.402; *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010).

## II. Medicare Secondary Payer Law.

21. In 1980, in response to skyrocketing costs, Congress began enacting the provisions that now comprise the Medicare Secondary Payer Law ("MSP Law"), 42 U.S.C. § 1395y(b). The primary intent underlying the MSP law is to shift the financial burden of health care from the Medicare program to private insurers and tortfeasors and thereby lower the overall cost of the Medicare program.

22. The MSP law is codified as 42 U.S.C. § 1395y(b), in Part E of the Medicare Act. The terms of the MSP law make clear that it is applicable to all payments "under this Subchapter," 42 U.S.C. § 1395y(b)(2)(A), which includes payments made by MAOs under Part C of the Act.

23. Moreover, Part C of the Medicare Act expressly incorporates the MSP law into the Medicare Advantage program, authorizing an MAO to charge a primary plan or an individual that has been paid by a primary plan "under circumstances in which payment

5

under this title is made secondary pursuant to" the MSP law (§ 1395y(b)(2)). 42 U.S.C. §1395w- 22(a)(4). In so doing, Congress expressed its understanding and intention that the MSP law applied to Medicare Part C.

24. The MSP law creates a federal coordination of benefits scheme, in which worker's compensation, liability insurance, and no-fault insurance, are primary, and Medicare benefits are secondary. *See* 42 U.S.C. § 1395y(b)(2); 42 C.F.R. § 422.108(b)(3). This includes tortfeasors (and their insurers), who are defined by the Medicare Act to be self-insured. *See, e.g.*, *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 75 (2d Cir. 2022); *Western Heritage Ins. Co.*, 832 F.3d at 1233.

25. When an MAO makes a payment for medical services that are the responsibility of a primary plan under the MSP law, those payments are conditional, whether the primary plan's liability was established at the time of the conditional payment or not. Federal regulations define the term "conditional payment" under the MSP law to mean "a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed." 42 C.F.R. § 411.21.

26. Because Medicare Advantage is simply another way in which Medicare beneficiaries may receive Medicare benefits, the same MSP rules apply. *See* CMS, <u>Medicare Managed Care Manual</u>, Chap. 4, § 130.3 (Rev. 107, 06-22-12) ("In the case of the presence of workers compensation, no-fault and liability insurance (including self-insurance), Medicare makes conditional payments if the other insurance does not pay promptly. These conditional payments are subject to recovery when and if the other insurance does make payment.").

27. CMS has interpreted the MSP Law as it applies to MAOs in a formal regulation, which states that "[t]he MAO will exercise the same rights to recover from a primary plan, entity or individual, that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). An entity that receives payment from a primary plan shall therefore be required to reimburse an MAO for conditional Medicare payments.

28. CMS has further explained that the regulation assigns MAOs "the right, under existing Federal law, to collect for services for which Medicare is not the primary payer" using "the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations." CMS, Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

29. The MSP Law makes clear that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse" any conditional Medicare payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

30. Indeed, an MAO that has advanced Medicare benefits has standing to sue a primary plan for double damages under the MSP private cause of action if it is not reimbursed for conditional payments. *See, e.g.*, *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66 (2d Cir. 2022); *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.,* 832 F.3d 1229 (11th Cir. 2016); *In re Avandia Mktg.,* 685 F.3d 353 (3d Cir. 2012); *Humana Ins. Co. v. Paris Blank LLP*, 187 F. Supp. 3d 676 (E.D. Va. 2016); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.,* 2015 WL 5449221, at *6 (E.D. Tenn. Sep. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.,* 73 F. Supp. 3d 653, 665 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.,* 95 F. Supp. 3d 983, 986 (W.D. Tex. 2014).

31. Federal regulations governing the Medicare program make clear how much an MAO is entitled to recover from an enrollees' judgment or settlement, including the circumstances in which the lien must be reduced for "procurement costs" like those at issue in this Complaint. *See, e.g.*, 42 C.F.R. § 411.37.

### III. Mandatory Administrative Exhaustion Requirements.

32. The Medicare Act contains a "nonwaivable and nonexcusable requirement that an individual present a claim [arising under the Medicare Act] to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 15 (2000).[1]

33. Enrollees who wish to challenge benefit determinations by their MA organization must therefore participate in an administrative review process that parallels—and eventually merges with—the appeal process required for Medicare Part A and B participants. *See Heckler v. Ringer*, 466 U.S. 602, 607 (1984) (describing traditional Medicare appeals process); *see also Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 911 (9th Cir. 2022) (MA enrollees must exhaust claims arising under Medicare Act); *Western Heritage Ins. Co.*, 832 F.3d at 1240 (MA enrollee did not exhaust dispute concerning reimbursement demand); *Giesse v. Sec'y of Dep't of Health & Human Servs.*, 522 F.3d 697, 703 (6th Cir. 2008) (summarizing Medicare Advantage administrative appeal requirements). That appeal process is governed by federal statutes and regulations. *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq.*

---

[1] The Act creates this mandatory exhaustion requirement by cross-references to the exhaustion and judicial review provisions of the Social Security Act, contained in 42 U.S.C. §§ 405(g) and (h). *See* 42 U.S.C. § 1395w-22(g)(5) (exhaustion requirement for Medicare Advantage enrollees); 42 C.F.R.§ 422.612 (same); *Uhm*, 620 F.3d 1141 n.9 (discussing Part C's exhaustion and judicial review provisions).

34. There are four separate levels of administrative review that must be completed before an enrollee may file suit on any claim arising under the Medicare Act:

    a. First, the MA Organization must determine whether an enrollee "is entitled to receive a health service . . . and the amount (if any) that the individual is required to pay with respect to such service." 42 U.S.C. § 1395w-22(g)(l)(A). This is known as an "organization determination" in Medicare-speak. If the MAO denies coverage, it must inform the enrollee in writing and "include a statement in understandable language of the reasons for the denial and a description of the reconsideration and appeals processes." *Id.* § 1395w-22(g)(1)(B).

    b. If requested by an enrollee, the MAO must reconsider its organization determination within sixty days. *Id.* § 1395w-22(g)(2)(A).

    c. Next, any adverse reconsideration decision may be appealed to an "independent, outside entity" under contract with the Secretary to hear such appeals. *Id.* § 1395w-22(g)(4).

    d. Finally, an enrollee dissatisfied with the determination of that external review entity is entitled to a hearing before the Secretary to the same extent as a beneficiary who elects to receive benefits under the traditional Medicare fee-for-service program. *Id.* § 1395w-22(g)(5). That involves, first, a hearing before an administrative law judge followed, if necessary, by an appeal to the Medicare Appeals Council—the very same entity that issues final determinations on behalf of the Secretary in Medicare Part A/B appeals.

35. At the conclusion of this appeal process, an enrollee dissatisfied with the decision of the Medicare Appeals Council may seek judicial review in federal district court directly against the Secretary. *Id.* §§ 405(g), 1395w-22(g)(5). Such suits may not be brought

in state court or filed directly against the MA organization. *See id.* § 405(h) ("No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . ..").

36. Exhaustion is required for any claim "arising under" the Medicare Act. *See Shalala,* 529 U.S. at 15; *Heckler,* 466 U.S. at 606, 622. That includes claims arising under Medicare Part C, which is at issue here. *See Glob. Rescue Jets, LLC*, 30 F.4th at 911; *Giesse,* 522 F.3d at 702; *Physicians Home Health Infusion, P.C. v. UnitedHealthcare of Midwest, Inc.*, No. 4:18-cv-01959 PLC, 2019 WL 6115153, at *11 (E.D. Mo. Nov. 18, 2019); *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222, 1234 (D.N.M. 2018); *Hepstall v. Humana Health Plan, Inc.*, 2018 WL 6588555, at *8 (S.D. Ala. Nov. 26, 2018), *report and recommendation adopted*, No. CV 18-0163-JB-MU, 2018 WL 6588552 (S.D. Ala. Dec. 6, 2018); *Shakespeare v. SCAN Health Plan, Inc.*, 2018 WL 340422, at *3 (S.D. Cal. Jan. 8, 2018); *Dicrescenzo v. UnitedHealth Grp. Inc.*, 2015 WL 5472926, at *3 (D. Haw. Sept. 16, 2015); *Quinones v. UnitedHealth Grp. Inc.*, 2015 WL 3965961, at *4 (D. Haw. June 30, 2015); *Cupp*, 2014 WL 916489; *Green v. Humana Ins.* Co., 2013 U.S. Dist. LEXIS 162416 (S.D. Miss. Nov. 14, 2013); *Mann v. Reeder*, No. 1:10-CV-00133-JHM, 2011 WL 665749, at *3 (W.D. Ky. Feb. 15, 2011).

37. A claim "'arises under' the Medicare Act if the Act provides the 'standing and substantive basis for the presentation of" plaintiff's claim. *Giesse*, 522 F.3d at 702 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61, (1975)).

38. In this suit, Plaintiff alleges that Rawlings violated CMS regulations because, when it asserted an MSP lien against her personal injury settlement on Aetna's behalf, it failed to subtract Plaintiff's procurement costs from the amount of the lien. In other words,

Plaintiff disagrees with Aetna and Rawlings as to the amount of the benefit she is entitled to retain under 42 C.F.R §411.37.

39. To recover these costs, Plaintiff asserts two state law claims: one for common law unjust enrichment, the other for common law conversion.

40. Courts routinely have held that disputes between Medicare members and their MAOs concerning the administration of Medicare benefits "arise under" the Medicare Act and must be exhausted. *See, e.g.*, *Glob. Rescue Jets, LLC*, 30 F.4th at 911; *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222 (D.N.M. 2018); *Hepstall v. Humana Health Plan, Inc.*, 2018 WL 6588555, at *1 (S.D. Ala. Nov. 26, 2018), *report and recommendation adopted*, No. CV 18-0163-JB-MU, 2018 WL 6588552 (S.D. Ala. Dec. 6, 2018); *Shakespeare v. SCAN Health Plan, Inc.*, 2018 WL 340422, at *3 (S.D. Cal. Jan. 8, 2018). This includes disputes concerning coordination of benefits, like the claim at issue here. *See Dicrescenzo v. UnitedHealth Grp. Inc.*, 2015 WL 5472926, at *3 (D. Haw. Sept. 16, 2015); *Quinones v. UnitedHealth Grp. Inc.*, 2015 WL 3965961, at *4 (D. Haw. June 30, 2015).

41. More specifically, the Medicare Act also includes disputes about whether enrollees must reimburse MAOs (or Medicare) under the Medicare Secondary Payer law after they recover settlements or judgments from primary plans, such as a tortfeasor settlement. *See, e.g.*, *Western Heritage*, 832 F.3d at 1240; *Haro v. Sebelius*, 747 F.3d 1099, 1114 (9th Cir. 2014); *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 312 (3d Cir. 2014); *Wilson v. United States*, 405 F.3d 1002, 1012 (Fed. Cir. 2005); *Fanning v. United States*, 346 F.3d 386, 399-402 (3d Cir. 2003); *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 779 (11th Cir. 2002); *Buckner v. Heckler*, 804 F.2d 258,259-60 (4th Cir. 1986); *In re Petition of Korff*, No. 13-CR-20600, 2016 WL 4537815, at *5 (E.D. Mich. Aug. 31, 2016);

*Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 661 (E.D. La. 2014); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329, 1332 (S.D. Fla. 2014); *Neff v. Sebelius*, No. CV 13-95-M-DWM, 2013 WL 5492938, at *4 (D. Mont. Oct. 1, 2013); *Wright v. Sebelius*, 818 F. Supp. 2d 1153, 1160-61 (D. Neb. 2011); *Bird v. Thompson*, 315 F. Supp. 2d 369, 371-75 (S.D.N.Y. 2003); *Nygren v. United States*, 268 F. Supp. 2d 1275, 1277-81 (W.D. Wash. 2003); *Estate of Barbeaux v. Lewis*, 196 F. Supp. 2d 519, 521-22 (W.D. Mich. 2002)

42. Notwithstanding this clear precedent, Plaintiff mistakenly alleges that the proper forum to adjudicate his Medicare Act dispute is in state court. That is incorrect.

## Grounds for Removal

**I.    The Federal Officer Removal Statute.**

43. The federal officer removal statute permits Rawlings to remove any civil action that is against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(l).

44. This statute allows removal of lawsuits even where the United States or its employees are not named as defendants in the litigation. The Supreme Court has repeatedly emphasized that "[t]he words 'acting under' are broad" and "the statute must be "liberally construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). This rule of liberal construction best serves the statute's purpose, which "is to protect the Federal Government from the interference with its 'operations'" in part by avoiding "State-court proceedings [that] may reflect 'local prejudice' against unpopular federal laws or federal officials." *Id.* at 150.

45. For a case to be removable under § 1442(a)(l), a defendant must show that it: (1) "is a 'person' within the meaning of the statute"; (2) "performed the actions for which it is being sued 'under color of [federal] office'"; and (3) "raised a colorable federal defense." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010). Each of these factors is met here.

46. *First*, "[Rawlings] is a 'person' within the meaning of the statute." *Mann v. Reeder*, 2010 WL 5341934, at *2 (W.D. Ky. Dec. 21, 2010). Under the Dictionary Act, "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

47. *Second*, Rawlings acts under color—and at the express direction—of CMS when it pursues recoveries members and primary payers under the MSP Law.

    a. It is well-established that private companies that contract with the Secretary in order to administer the Medicare program are acting "under the direction" of federal officers. It has long been clear that Part A and B contractors are deemed to be acting under color of federal law (for purposes of § 1442(a)(l) removal) when administering the Medicare program pursuant to contracts with the Secretary. *See, e.g.*, *Peterson v. Blue Cross/Blue Shield*, 508 F.2d 55, 57–58 (5th Cir. 1975); *Neurological Assocs. v. Blue Cross/Blue Shield of Florida, Inc.*, 632 F. Supp. 1078, 1080 (S.D. Fla. 1986); *Group Health, Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887, 890 (S.D.N.Y. 1984); *Kuenstler v. Occidental Life Ins. Co.*, 292 F. Supp. 532, 535 (C.D. Cal. 1968); *see also Ryan v. Dow Chern. Co.*, 781 F. Supp. 934, 949 (E.D.N.Y. 1992) ("Defendants in suits against private companies acting as fiscal intermediaries for the

federal Medicare program have been found entitled to removal under section 1442(a)(l)." (collecting authorities)).[2]

    b. Moreover, as noted above, courts also have held that Medicare Advantage Organizations administering Part C benefits act under color of federal law when they are coordinating benefits and pursuing recoveries from members and/or primary payers under the Medicare Secondary Payer law, just as Rawlings is alleged to have done here. *See, e.g.*, *Heino v. U.S. Ctr. for Medicare*, — F. Supp. 3d. —, 2023 WL 8878953, at *6 (D. Or. Dec. 22, 2023) (Aetna acted under color of federal law as an MAO); *Escarcega v. Verdugo Vista Operating Co., LP*, 2020 WL 1703181, at *7 (C.D. Cal. Apr. 8, 2020); *Einhorn*, 43 F. Supp. 3d at 1270; *Cupp.*, 2014 WL 916489, at *1; *Manorcare Potomac*, 2002 WL 31426705, at *1; *see also Potts v. Rawlings Co.*, LLC, 897 F. Supp. 2d 185, 188 (S.D.N.Y. 2012) (defendants removed MSP dispute based in part on federal officer removal statute); *Gen. Surgical Assocs., P.A. v. Humana Health Plan of Texas, Inc.*, 2014 WL 12496771, at *5 (W.D. Tex. Apr. 21, 2014), *supplemented*, 2014 WL 12496896 (W.D. Tex. Sept. 23, 2014), *report and recommendation approved sub nom. Gen. Surgical Assocs. v. Humana Health Plan of Texas, Inc.*, 2015 WL 11661755 (W.D. Tex. Feb. 4, 2015), *and report and recommendation approved sub nom. Gen. Surgical Assocs. v. Humana Health Plan of Texas, Inc.*, 2015 WL 11661755 (W.D. Tex. Feb. 4, 2015) (Humana acted under color of federal law while serving as an MAO and administering federal employee health benefit plans).

    c. These holdings make perfect sense; after all, Aetna (and its vendor, Rawlings) administer Medicare Advantage plans pursuant to contracts with the Secretary.

---

[2] Part A and B contractors were formerly known as "fiscal intermediaries" and "carriers," but now are called "Medicare Administrative Contractors" ("MAC"). *See* 42 U.S.C. § 1395kk-1.

*See* 42 U.S.C. § 1395w-27. Those contracts require MAOs to provide members with at least the same benefits they would receive under the fee-for-service Medicare program. *See id.* § 1395w-22. That includes all services deemed as "covered" services by CMS. *See* 42 C.F.R. § 422.101(a). Thus, Aetna and Rawlings made their Medicare claims processing determinations pursuant to its authority (and obligations) as a federal officer.

        d.     Perhaps most importantly, Aetna and Rawlings's benefit determinations are subject to direct oversight by CMS through the mandatory appeals process described above. If a Medicare member believes that she has been denied a benefit to which she was entitled under her plan, the only remedy is to exhaust the dispute through that appeal process, culminating in review by the Medicare Appeals Council. *See Shalala*, 529 U.S. at 15; *Giesse*, 522 F.3d at 702. If still unsatisfied at the end of that appellate process, the member's recourse is to file suit against the Secretary of Health and Aetna and Rawlings services, not against his MAO. *See* 42 U.S.C. §§ 405(h), 1395w-22(g). This further demonstrates that all benefits determinations made by an MAO are made pursuant to federal authority and oversight. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (a private person is considered to be "acting under" a federal agency when it makes "an effort to assist, or to help carry out, the duties or tasks of the federal superior").

    48.    *Third*, Rawlings has more than "colorable" federal defenses to Plaintiff's claims. Indeed, federal law makes clear (1) that courts lack jurisdiction over Plaintiff's unexhausted claims and (2) that those claims are expressly preempted by the Medicare statute in any event.

    49.    Plaintiff's claims are barred by 42 U.S.C. § 405(h), which requires administrative exhaustion of any claim arising under the Medicare Act. *See Shalala*, 529 U.S.

at 15. This includes disputes about a member's entitlement to benefits under Medicare Part C. *See Giesse*, 522 F.3d at 702. As noted above, claim-processing disputes between enrollees and their MAOs "arise under" the Medicare Act and must therefore be exhausted. *See id.*; *Haaland*, 292 F. Supp. 3d at 1234; *Hepstall*, 2018 WL 6588555, at *8; *Shakespeare*, 2018 WL 340422, at *3; *Dicrescenzo*, 2015 WL 5472926, at *3; *Quinones*, 2015 WL 3965961, at *4; *Cupp*, 2014 WL 916489; *Green*, 2013 U.S. Dist. LEXIS 162416; *Mann*, 2011 WL 665749, at *3.

50. In addition, even if Plaintiff had exhausted her administrative remedies, the Medicare Act would expressly preempt Plaintiff's state-law claims against Rawlings. 26 U.S.C. § 1395w-26(b)(3) provides that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." *See also* 42 C.F.R § 422.108(f) ("[T]he rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans."). Plaintiff's asserted right to receive additional Medicare benefits from Humana is preempted because federal standards dictate the circumstances in which Medicare liens must be reduced to account for procurement costs. *See, e.g.*, 42 C.F.R. § 411.37.

51. The bottom line is that removal is proper because this case satisfies all three requirements of the Federal Officer removal statute.

52. True, the Sixth Circuit has held, in an unpublished case, that an MAO did not qualify for Federal Officer removal under the particular facts of that case. *See Ohio State Chiropractic Ass'n v. Humana Health Plan, Inc.*, 647 F. App'x 619 (6th Cir. 2016). But that case

16

is different from this one. As the Sixth Circuit noted, the dispute in *Ohio State Chiropractic* was not over a denial or reduction of "Medicare benefits or reimbursements," subject to the administrative-exhaustion requirement, as is the case here. *Id.* at 625. Instead, it was "a private billing dispute" between an MAO and a provider; no benefits were involved. *Id.*

53. That's wholly different from this case. Numerous courts have held that, when it comes to disputes about a member's entitlement to benefits under Medicare Part C, MAOs like Aetna and its recovery vendor, Rawlings, are considered federal officers for purposes of removal. *See, e.g.*, *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, — F.4th —, 2024 WL 3419778, at *4 (5th Cir. July 16, 2024); *Potts*, LLC, 897 F. Supp. 2d at 188; *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d at 1270.

54. Because Rawlings is a person acting under color of federal office with colorable federal defenses, this case qualifies under the Federal Officer removal statute. *See Potts*, 897 F. Supp. 2d at 188 (recognizing Rawlings' right to remove under the Federal Officer removal statute based on its role as an agent of the Secretary in the provision of subrogation services for MA plan).

## II. Class Action Fairness Act.

55. This case also is removable under the Class Action Fairness Act, 28 U.S.C. § 1332(d). CAFA provides that federal jurisdiction exists over any class action (a) in which the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; (b) the class contains at least 100 members; and (c) any class member is a citizen of a different state from any defendant. *Id.* § 1332(d)(1)(B), (d)(2), (d)(5).

56. Plaintiff's complaint is styled as a nationwide class action, as defined in 28 U.S.C. § 1332(d)(1)(B). *See generally* Compl. ¶¶ 13, 36–50.

57. The putative class contains at least 100 members. By Plaintiff's own count, the number of Medicare Advantage enrollees nationwide is in the millions. *Id.* ¶ 6. The class she seeks to represent is composed of all MA enrollees in the country whose personal injury recoveries have been reduced by a subrogation lien that does not exclude procurement costs. Aetna is the third largest MAO in the country by market share.[3] Given her suggestion that the Evidence of Coverage approved by the HHS Secretary "purports to give Aetna the right to recover primary payments without accounting for the procurement costs" as a matter of across-the-board policy, there is no question the number of putative class members exceeds 100.

58. The aggregate amount in controversy exceeds $5 million. Plaintiff claims she is entitled to recover $6,930.41. Even taking that relatively small amount of procurement costs as normative, the sheer size of the putative class suggests that the amount in controversy is "more likely than not" to exceed $5 million, exclusive of costs and interest. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993).

59. This case also satisfies CAFA's minimal diversity requirement. Rawlings is a Kentucky limited liability company whose sole member is Continental Buyer, Inc., a Delaware corporation with its principal place of business in New York. Plaintiff is a citizen of Ohio.

60. Accordingly, this Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(d).

---

[3] AMA Identifies Market Leaders in Health Insurance (Dec. 12, 2023), https://www.ama-assn.org/press-center/press-releases/ama-identifies-market-leaders-health-insurance#:~:text=Medicare%20Advantage%20markets&text=UnitedHealth%20Group%20was%20the%20largest,%25%20(25)%20of%20MSAs, last visited July 18, 2024.

61. Both 28 U.S.C. §§ 1441(a) and 1453(b) operate to provide that any class action over which this Court would have original jurisdiction may be removed to this Court by the Defendant.

62. Immediately upon filing of this notice of removal, Rawlings will give written notice to Plaintiff's counsel of the removal of this case and will file a copy of this notice of removal with the clerk of the Cuyahoga County Court of Common Pleas, pursuant to 28 U.S.C. §1446(d).

                    Respectfully submitted,

                    */s/ Michael T. Leigh*
                    Michael P. Abate
                      *Pro hac vice forthcoming*
                    Michael T. Leigh
                      Ohio Bar No. 98627
                    Burt A. (Chuck) Stinson
                      *Pro hac vice forthcoming*
                    Kaplan Johnson Abate & Bird LLP
                    710 West Main Street, 4th Floor
                    Louisville, KY 40202
                    Tel:   (502) 416-1630
                    Fax:  (502) 540-8282
                    mabate@kaplanjohnsonlaw.com
                    mleigh@kaplanjohnsonlaw.com
                    cstinson@kaplanjohnsonlaw.com

                    *Counsel for Defendant*

**Certificate of Service**

I hereby certify that on July 22, 2024, a copy of the foregoing Notice of Removal was electronically filed using the Court's CM/ECF system and served by United States First Class Mail, postage prepaid, on the following:

Patrick J. Perotti
Frank A. Bartela
Shmeul S. Kleinman
Dworken & Bernstein Co., LPA
60 South Park Place
Painesville, OH 44077
(440) 352-3391
pperotti@dworkenlaw.com
fbartela@dworkenlaw.com
skleinman@gmail.com

James A. DeRoche
Garson Johnson LLC
2900 Detroit Avenue
Van Roy Building 2nd Floor
Cleveland, OH 44113
(216) 696-9330
jderoche@garson.com

*Counsel for Plaintiff*